* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission modifies the Opinion and Award of Deputy Commissioner Rowell.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. On March 13, 2000, the date of the injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. On March 13, 2000, an employment relationship existed between plaintiff and defendant-employer.
5. North Carolina Guaranty Fund was the carrier on the risk.
6. Plaintiff's average weekly wage at the time of injury per Form 60 is $580.38, which yields a compensation rate of $386.94.
7. The parties stipulated into evidence as Stipulated Exhibit #1 a Pre-Trial agreement that was modified and initialed by the parties.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 55 years old with an 8th grade education. Plaintiff does not have a GED. Plaintiff was employed by defendant-employer for 28 years performing maintenance on water tanks.
2. On March 13, 2000, as plaintiff was installing a water tank, he turned around and felt a pop in his back. He immediately reported the injury to defendant-employer and indicated *Page 3 
that he needed to see a doctor. Defendants accepted plaintiff's March 13, 2000 injury as compensable.
3. Plaintiff presented to Dr. Sami J. Oweida at Oweida Orthopaedic on March 15, 2000 with complaints of back pain radiating into his right leg. Dr. Oweida diagnosed plaintiff with sciatica and back pain. An MRI conducted in November 2002 showed a disc herniation at L4-5.
4. Dr. Oweida continued to provide conservative treatment until February 28, 2001, when he discussed surgical decompression and referred plaintiff to Dr. Michael Getter.
5. Defendants referred plaintiff to Dr. Paul Tsahakis of Miller Orthopedic Clinic. Dr. Tsahakis recommended a right L4-5 decompression and microdiskectomy, which was performed on May 16, 2001.
6. Following the surgery, plaintiff continued to suffer from low back pain. Dr. Tsahakis had another MRI performed which demonstrated a desiccated disc at L4-5. Dr. Tsahakis recommended one or a series of L5 nerve root blocks on the right side.
7. Dr. John Welshofer, a colleague of Dr. Tsahakis, performed the nerve blocks on plaintiff. The blocks did not work and Dr. Welshofer performed EMG testing. The EMG testing revealed no evidence of ongoing lumbar radiculopathy or peripheral neuropathy.
8. Dr. Tsahakis discussed the option of fusion surgery. Plaintiff rejected further surgery and accordingly, on May 6, 2002, Dr. Tsahakis released plaintiff at maximum medical improvement. Dr. Tsahakis assigned permanent restrictions of no lifting over 25 to 30 pounds, no repetitive bending, lifting, or twisting, and assigned plaintiff a 25% permanent partial impairment rating to his back. In his deposition, Dr. Tsahakis testified that plaintiff had a 10% *Page 4 
permanent partial impairment rating and the 25% rating noted on May 6, 2002 was a clerical error.
9. Dr. Tsahakis gave no medical expert testimony to support a contention that plaintiff is not a viable candidate for vocational rehabilitation. Further, Dr. Tsahakis testified that it would be appropriate for plaintiff to attempt to find work within the restrictions assigned to him.
10. Defendants initiated vocational rehabilitation services through Ms. Robin Terlizzi, a Vocational Rehabilitation Consultant, who was assigned to assist plaintiff on January 2, 2003. At a meeting with plaintiff and plaintiff's counsel on January 15, 2003, plaintiff informed Ms. Terlizzi that he was not able to sit or stand for more than thirty minutes and that his most comfortable position was lying in his recliner.
11. Ms. Terlizzi administered the Wide Range Achievement Test, Revised Edition 3, Reading and Math sections and plaintiff scored at a 2nd grade level in reading and 3rd grade level in math.
12. Ms. Terlizzi recommended plaintiff attend GED classes and ultimately obtain a GED. Plaintiff expressed concern in taking the class because he could not sit for long periods of time as would be required by the GED program due to his ongoing back pain.
13. On December 12, 2003, defendants filed a Motion to Compel plaintiff's cooperation with vocational rehabilitation efforts. On January 22, 2004, Executive Secretary Tracey Weaver ordered plaintiff to cooperate with any and all vocational rehabilitation services provided by defendants.
14. Pursuant to this Order, plaintiff began attending GED classes on March 1, 2004. Initially, Ms. Terlizzi recommended plaintiff attend class three hours per day, eventually *Page 5 
working up to five or six hours per day. Plaintiff was experiencing difficulty in attending the classes due to pain caused by sitting for several hours. Plaintiff informed Ms. Terlizzi that he was having difficulty in class due to his pain. Ms. Terlizzi told plaintiff to bring a pillow to class, take frequent breaks, and prop his leg up. Despite plaintiff's complaints of ongoing pain which was affecting his ability to attend GED classes, defendants did not provide medical treatment to plaintiff for his continuing pain.
15. Because of his continuing pain, plaintiff sought treatment on his own from Dr. Oweida on April 30, 2004. At that time, plaintiff was diagnosed with sciatica. Dr. Oweida had the impression plaintiff had persistent back and leg pain following decompressive surgery now approaching three years. He recommended a gadolinium enhanced MRI and noted plaintiff's hesitancy to consider additional surgery.
16. Although Dr. Oweida testified that plaintiff may be disabled, he did not give an opinion that vocational rehabilitation services were inappropriate. Furthermore, he did not give an opinion that plaintiff should not participate in GED classes.
17. Plaintiff stopped attending the GED classes in April 2004 due to continued back pain he experienced while attending the GED classes. Ms. Terlizzi's only other recommendation for vocational rehabilitation for plaintiff was a work adjustment program.
18. On June 8, 2004, defendants filed a Form 24 Application to suspend plaintiff's compensation for plaintiff's unjustifiable refusal to comply with the January 22, 2004 Order. On July 9, 2004, Special Deputy Commissioner Elizabeth "Lacy" Maddox filed an Order approving defendants' Form 24 Application. Plaintiff's benefits were suspended as of June 8, 2004, the date on which the Form 24 Application was filed, and continuing until plaintiff demonstrated full compliance and vocational rehabilitation. *Page 6 
19. Ms. Terlizzi last saw plaintiff on June 15, 2004, and encouraged him to attempt to return to GED classes. Once plaintiff stopped attending GED classes, Ms. Terlizzi made several attempts to contact plaintiff to follow-up but plaintiff ceased contact with her. Thereafter, she closed her file and did not provide vocational rehabilitation services as of the end of August 2004.
20. On April 19, 2005, plaintiff was evaluated by Dr. David Jones, a neurosurgeon with Piedmont Neurosurgery, P.A. Dr. Jones recommended an MRI of the lumber spine, prescribed Mobic, and indicated plaintiff would be a good candidate for a formal long-term chronic pain management program. After reviewing the MRI, Dr. Jones indicated that he doubted further surgical intervention would have much impact on plaintiff's continuing back and leg pain. Dr. Jones referred plaintiff for a long-term chronic pain management facility.
21. On July 5, 2005, plaintiff presented for a Functional Capacity Evaluation but he did not complete it due to physical symptoms.
22. The Full Commission finds that based upon the greater weight of the evidence plaintiff is a viable candidate for vocational rehabilitation.
23. It is determined based upon a careful review of the evidence in its entirety, including plaintiff's testimony, along with the medical evidence, that under these particular circumstances, plaintiff's failure to attend GED classes as requested by defendants and ordered by the Industrial Commission was justified due to his continued back and leg pain. This continued pain impacted plaintiff's ability to sit or stand greater than 30 minutes at a time and thereby justified plaintiff's refusal to attend the GED classes.
24. Plaintiff has shown by the greater weight of the evidence that his refusal or failure to attend the GED classes under these particular circumstances as requested by defendants was *Page 7 
justified and that he remains disabled. Therefore, plaintiff is entitled to have his temporary total disability compensation benefits reinstated from June 8, 2004 and continuing to the present.
25. While in many respects, plaintiff was not compliant with the attempts to obtain a GED, in looking at plaintiff's situation as a whole, including consideration of plaintiff's age, physical abilities, educational level, and ongoing pain, and the particular circumstances of this case, plaintiff was justified in his non-compliance. Considering the circumstances of this case, the Full Commission finds it appropriate that plaintiff be required to comply with reasonable vocational rehabilitation efforts and that defendants provide a current vocational rehabilitation assessment, taking into account plaintiff's age, physical abilities, educational level, and interests to determine whether a GED is the most appropriate form of vocational rehabilitation for plaintiff.
26. Plaintiff has shown by the greater weight of the medical evidence that he has not yet reached maximum medical improvement.
27. Dr. Oweida is no longer designated as an authorized treating physician.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On March 13, 2000, plaintiff sustained an injury by accident arising out of and in the course of his employer, which defendants have admitted as compensable. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate result of plaintiff's compensable injury to his back and his resulting back and leg pain, plaintiff remains disabled. N.C. Gen. Stat. § 97-2(9). *Page 8 
3. Under the particular circumstances surrounding this attempt at vocational rehabilitation, plaintiff's refusal or failure to attend GED classes as ordered by the Industrial Commission was justified due to his continued back and leg pain and his inability to sit or stand for greater than 30 minutes at a time. As such, plaintiff is entitled to have his temporary total disability compensation benefits reinstated from June 8, 2004 and continued to the present. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to have defendants pay for medical expenses necessitated by his compensable March 13, 2000 back injury and his failed back surgery as may be reasonably required to effect a cure or give relief, including medical treatment provided by Dr. Oweida and pain management if recommended by an authorized treating physician. N.C. Gen. Stat. §§ 97-2(19) 97-25.
5. Plaintiff has not reached maximum medical improvement.
6. Dr. Oweida is no longer designated as an authorized treating physician. Within 30 days of this Opinion and Award, the parties shall agree upon a facility for pain management treatment to plaintiff as recommended by Dr. Jones.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to the attorney's fees hereinafter approved, defendants shall pay to plaintiff temporary total disability benefits at the compensation rate of $386.94 per week from June 8, 2004 and continuing until such time as plaintiff returns to work, or until so ordered by the Industrial Commission. Any amount which has already accrued shall be paid in a lump sum. *Page 9 
2. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff under paragraph 1 of this award is approved for plaintiff's counsel and shall be paid by defendants as follows: Twenty-five (25%) percent of the lump sum due plaintiff under paragraph 1 of this award which has accrued to date shall be paid directly to the plaintiff's counsel. Plaintiff's counsel thereafter shall receive every fourth compensation check.
3. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury for so long as it tends to effect a cure and give relief or lessen plaintiff's disability.
4. Within 30 days of this Opinion and Award, the parties shall agree upon a facility for pain management to provide treatment to plaintiff as recommended by Dr. Jones.
5. Defendants shall pay the costs.
 * * * * * * * * * * * ORDER
Plaintiff is HEREBY ORDERED to fully comply with all reasonable and prescribed medical and rehabilitative treatment as provided by defendants, including vocational rehabilitation. N.C. Gen. Stat. §97-25. Defendants shall assign a new Rehabilitation Professional to conduct a new assessment, taking into consideration and coordinating with any pain management treatment plaintiff shall be receiving, for determination of other vocational alternatives to plaintiff obtaining a GED. Refusal to comply with this Order shall bar plaintiff from further compensation until such refusal ceases unless, in the opinion of the Industrial Commission, the circumstances justified the refusal.
 This the 5th day of April 2007. *Page 10 
 S/ _______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/ _______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/ _______________________ PAMELA T. YOUNG COMMISSIONER *Page 1